Good morning, Your Honors. May it please the Court. Yes, by all means, on behalf of Appellant SR Construction, Inc., this appeal concerns the issuance of a turnover under the auspices of 11 Section 542. The underlying dispute is between two non-debtor parties who are fighting over assets that can no longer be property of the debtor's bankruptcy estate entitled to which is governed by California law. Appellant wishes to focus on two issues for the Court's benefit. First, the Bankruptcy Court lacks subject matter jurisdiction because Appellee lacks standing, as only a debtor or trustee may seek the turnover of property via a Section 542 turnover motion. And upon the sale's closing, the debtor no longer owned any interest in the assets sold to Appellee, rendering the turnover motion moot. The District Court erred in finding that the Bankruptcy Court had subject matter jurisdiction to hear and rule upon the turnover motion without even addressing Appellant's standing and mootness arguments. In light of the lack of standing and the inevitable mootness which followed, the District Court could not have properly determined that the Bankruptcy Court had subject matter jurisdiction over the turnover motion. The second issue concerns the actual transfer of the disputed property. And even if the Bankruptcy Court had jurisdiction to consider and rule upon the turnover motion, it still erred in entering the turnover order. The prior owner did not obtain title to the disputed property because it never paid for it in full. California law and the contract between Appellant and the prior owner required payment in full before title to property, the disputed property here, could transfer. And because the prior owner never acquired title to the disputed property, the property could not have then been transferred to the debtor. With respect to the subject matter jurisdiction issues, the Bankruptcy Court's jurisdiction was governed by 28 U.S.C. 157 and 28 U.S.C. 1334b. The Bankruptcy Court's jurisdiction cited Section 542 in our conclusions of law. And in addition to the requirements that I just read into the record, the Court's subject matter jurisdiction is circumscribed by the doctrines of standing and mootness. In El Paso County versus Trump, this Court has held that standing must exist at all stages of the litigation. And that standing, that requisite personal interest, must continue throughout its existence. Additionally, mootness during the course of a proceeding will divest the Court of subject matter jurisdiction. The turnover motion sought the turnover of property that the debtor and appellee asserted had been property of the debtor's bankruptcy estate and had been transferred to appellee under the sale order. However, appellee lacks standing because only a debtor in possession or a trustee may seek turnover of property. And this is consistent with not only 11 Section 157 and U.S.C. 542's plain language, but with the litany of precedent that we've cited for you in our briefs. Importantly, appellee lacks standing to seek turnover of the disputed property at all times. Upon the sale's closing, the debtor no longer owned an interest in the asset. So did the appellee. And consequently, the turnover motion became moot because the Bankruptcy Court couldn't grant the requested relief. It bears noting on a linear timeline, the asset purchase sale closed on or about January 25th, 2021. The amended motion for turnover was filed April 8th, 2021, and the turnover order was issued by the Bankruptcy Court on October 1st, 2021. It should also be noted that appellee does not dispute that it lacks standing, and appellee's novel argument that mootness would only come into play if the Bankruptcy Court had decided that the disputed assets belonged to appellant lacks merit. The fact that appellee acquired title to the debtor's asset after the turnover motion was filed cannot confer standing. We cited Kitty Hawk Air Cargo for that proposition where the court held, a party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish its standing. The Bankruptcy Court also lacked subject matter jurisdiction to enforce the sale order and lacked jurisdiction to delineate the rights of the parties. Appellee claims that the Bankruptcy Court had jurisdiction to enforce its prior orders, but that argument fails because the bankruptcy sale order was clear and unambiguous, and it didn't require interpretation of any kind. Next, appellee takes the position that the Bankruptcy Court had subject matter jurisdiction to enforce the sale order. The problem with that argument was that the turnover motion wasn't a motion to enforce the sale order, but instead it sought a determination about who owned the underlying disputed property. We view that as an impermissibly broad view of the Bankruptcy Court's enforcement powers. But the Bankruptcy Court could not obtain jurisdiction over something it never had jurisdiction with in the first place, and the Bankruptcy Court certainly couldn't enlarge its own jurisdiction either. And this is consistent with the FedPAC systems case, which held that the Bankruptcy Court lacked jurisdiction to issue an order delineating the rights of the parties to property which was previously sold by the debtor pursuant to a bankruptcy order. Critically, at the time, the turnover motion was decided by the Bankruptcy Court. The debtor owned no interest in the disputed property. It either belonged to appellant or appellee. Hence, the Bankruptcy Court lacked subject matter jurisdiction to decide the turnover motion. It does seem to me that one of the central questions here you're addressing in different ways, what is the authority of the Bankruptcy Court to return to its prior order? Initially being asked to deal with the sale order and then enter the turnover order, what do you do with the 2009 Travelers v. Bailey Supreme Court opinion that allowed the Bankruptcy Court to return 20 years later after a 1986 order to interpret it, and I don't quite remember the details enough to say to enforce it. Are you familiar with that case, with Travelers? I am not, Your Honor. Okay. Well, it's cited, I think, in Appellee's brief, but I could be wrong about that. But there's certainly other cases you've talked about, about whether a Bankruptcy Court retains jurisdiction. To enforce its order, you distinguish some cases that they deal with. I've looked at the FedPAC case that you rely on to some extent. But it does seem to me generally federal courts have authority to interpret their orders even after the fact and to enforce their orders specifically in the bankruptcy context, it seems to me, is the issue that we have. Isn't that what this is, though, basically, an enforcement of the early order, and your issue is there is no jurisdiction to do that, standing or jurisdiction? Your Honor, that's correct. Our proposition as appellant is that standing, certainly Appellee never had standing to bring the turnover motion. The debtor did initially have standing to bring the turnover motion, but it was lost. It became moot once the property was sold on January 25th, 2021. And it was . . . What authority did the Bankruptcy Court have after that date over that order? After the sale occurred, and whatever you want to say is the effective date of the sale and effective date that the property left the estate, what authority did the Bankruptcy Court have over that previous order? None at all? Your Honor, appellant's position is that once the . . . this was a single-asset debtor. Once that asset left the estate, there really was no reason to keep the bankruptcy case open, because the bankruptcy . . . there was no item in dispute as to the content of the sale order or anything that required declaratory relief of any kind. So our position would be that the Bankruptcy Court lost jurisdiction to the extent, in this context at least. But the Bankruptcy Court approved something, ordered something, directed the parties to do something. That's not done. Can't the parties return or the offended party return to the Bankruptcy Court and say, enforce this? Your Honor, not in this context, because the state law would govern what . . . who would own the disputed property to begin with. And so state law would be . . . a state court would be the appropriate place to have that dispute as to what . . . But Travelers dealt with an insurance company who had its claims and the claims against it dealt with bankruptcy. And then years later, other claimants filed against the insurance company inconsistently with that Bankruptcy Court had held. Travelers then goes into Bankruptcy Court to cut off what was going on in state court. Again, I may have the procedure a little bit wrong, but you seem to be saying that because there's another option, and I agree with you, there probably were other options, that they have to be allowed to proceed. And I do think, again, it's unfair since you said you're unfamiliar with the case, but there at least is case law out there saying that the Bankruptcy Court's order can be further addressed back in Bankruptcy Court if it's being ignored, not being followed, whatever else. And, Your Honor, I understand . . . Do you disagree with that concept, even if you're not familiar with the court? I do not disagree with the concept, Your Honor. I do believe that the Bankruptcy Court can enforce its orders, so let me be clear about that. But I think fundamentally there must be subject matter jurisdiction. And that goes to the next point in my argument today, which is that there was a discussion in Apelli's briefs about core and non-core jurisdiction. And we have addressed those as really nothing more than red herring because the fundamental subject matter jurisdiction never was present. There was no conceivable effect on the debtor's estate at the time the asset left the estate, and that's because there was no alteration of the rights, obligations, and choices of the debtor once the property left the estate. And there were no indemnification obligations, representations, or warranties in favor of the Apelli that would warrant any claim against the estate. So there was, from our view of the cases, FedPAC and otherwise, because this was an as-is sale, because there were no representations and warranties, because there were no indemnity obligations, there could be no conceivable effect on the bankruptcy estate. And hence, core or non-core, those references would not be used. Additionally, there were some arguments made by Apelli that subject matter jurisdiction was waived, and we believe, again, that subject matter jurisdiction cannot be waived by consent, conduct, or even estoppel, citing the Sarimanto case. The next part of my argument relates to the following two clearly erroneous findings of fact by the Bankruptcy Court. With respect to that issue, there were two clearly erroneous findings of fact made, which were unsupported by California law, the construction contract, the conveyance agreement, and the bill of sale. First, that the prior owner acquired title to the disputed property, and second, that title to the disputed property was appropriately conveyed from the prior owner to the debtor such that it became part of the bankruptcy estate. As the Bankruptcy Court acknowledged in the turnover order, the debtor and Apelli had the burden to prove by clear and convincing evidence who owned the disputed property. Under either clear error or a de novo standard, the Bankruptcy Court erred when it found that the debtor and Apelli had met their burden of proof by clear and convincing evidence that the disputed property was not only owned by the prior owner, but also validly conveyed to the debtor such that the disputed property was part of the bankruptcy estate. And likewise, the District Court erred in affirming those findings. So, to make sure we understand what you're challenging, the Bankruptcy Court goes through, it seems to me, three different documents on the various, various three different, uh, three different documents on each occasion that end with, uh, your client waiving any rights to the particular items that were, that were involved. It seems to me a pretty meticulous looking at the documents saying some of this is confusing, the evidence could be better. But it seems to me if that's what you're talking about, it's a, it's a, it's a pretty detailed, uh, reliance on the documentation that the parties made available to the Bankruptcy Court and made ultimate findings about each of these, uh, items of FF&E, uh, having been claimed by your client, having been released from them. So, are those the findings that you're challenging? And if so, where am I wrong about how carefully the District Court, the Bankruptcy Court went through this? Thank you, Your Honor. In 30 seconds, uh, there's, there's two particular pieces of evidence that the Bankruptcy Court and the District Court completely ignored. The first is the plain language of the underlying construction contract between appellate and the prior owner. Uh, 7.42 is the section, that issue, required full payment for title to, to pass. That was a condition precedent that was never satisfied. California requ, law required it. Secondly, in the conveyance agreement from appellate, excuse me, from the prior owner of the appellate, it required, it acknowledged prior payment needed to be made. You can take a few more seconds if you need. Did you complete your answer? I did. Thank you, Your Honor. The, the Exhibit B to the conveyance agreement, uh, it, to the bill of sale, rather in the conveyance agreement, it actually acknowledged that there were certain items in an off-storage warehouse that needed to be paid for. None of that was addressed. Those two documents were not addressed in either order. All right, Counsel. Thank you, Your Honor. May it please the Court, I'm Frank Wright, and I'm counsel for the Appley Hall, Palm Springs. My client made a loan to build a hotel in Palm Springs, California, and then ultimately bought the hotel in its unfinished condition along with the construction materials. What we're here about today is the construction materials. What this Court dealt with last year was the hotel itself. Uh, because this has been, this is the second appeal. The first appeal was of the sale of the hotel, the sale order, and this one relates to the Court's jurisdiction, standing, and two fact findings. Uh, I'll address each of those and also the issue of mootness of this appeal under 363M. In summary, appellant's jurisdictional argument fails because the bankruptcy court unquestionably had either core or related to jurisdiction. Had core jurisdiction because this was a motion to turn over the property under 542, and this also was a motion to enforce and interpret the sale order. So, on either one of those, that is core jurisdiction, uh, there also was related to, and, and also the motion that was filed, he mentioned the amended motion was filed after the closing. Well, the, the initial motion that was filed was filed before the closing. So, you had a sale take place, court entered the sale order, then we filed a motion to enforce that sale order, um, in order to turn over a property that was missing, um, and then we had the closing on the sale, and then subsequently a couple of months later, amended the motion where we found more things had been taken, um, and then had the hearing. On a related to jurisdiction, this court has decided, uh, whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action, either positively or negatively, and which in any way impacts upon the handling and administration of the bankruptcy estate. In this case, there definitely was an impact on the bankruptcy estate. The debtor, which had sold the hotel, was unable to perform under the contract because he couldn't both transfer the title and deliver, and the contract, the purchase agreement, as the bankruptcy court found, required both, both the transfer and delivery of possession, and possession had been taken and removed from the property by SR Construction, the appellant. The PACOR test is an ex-ante inquiry because it focuses review of what could conceivably affect the bankruptcy estate. It specifically avoids making a jurisdictional decision after the merits have been resolved, as the appellant has asked you to do. Instead, the PACOR test provides certainty on related to jurisdictional disputes and furtherance of the bankruptcy court's objectives of just, speedy, and inexpensive determinations of matters related to pending bankruptcy cases. The appellant's position seems to be that once you push the property out the door of the bankruptcy court, the hotel and these fixtures and doors and whatever else, anything you do regarding it, any dispute regarding it, is no longer affecting anything in the bankruptcy. Now, if you think I mischaracterized their position, then correct me, but if that's the position, how does this follow-on dispute about how much the purchaser was supposed to get, how much SR Construction may have taken off the premises that he should have taken off the premises? It affects the bankruptcy estate because if all of the property that was supposed to be conveyed to the buyer isn't conveyed, then there's a change in consideration. In other words, you pay a certain price. If you don't get all the assets that you bargained for, then there has to be an adjustment in consideration or you have to undo the whole sale. And so that affects the bankruptcy estate in that either there's going to be a reduction in the debt of whole, which increases the like, I mean, there's going to be an increase in the debt of whole because it's not been satisfied by the personal property that was also supposed to be conveyed. Well, one of the things that concerns me just a bit about your briefing, at least, is I think you may be acknowledging, and tell me I'm wrong, a lack of clarity about exactly what this court should be relying on. You say that turnover relief is merely an efficient effectuation of enforcement. At worst, the bankruptcy court may have exercised a pseudo-supplemental form of jurisdiction. That's a worrisome sentence. That's a worrisome thing. If you want to blame somebody else for the sentence, that's fine with me, but what is, I mean, it seems to me, is it fair to say there's a lack of clarity about exactly what jurisdiction is being exercised here? And if so, why is that? No, I don't think so. And I think, Judge, the reason there's not a lack of clarity is the bankruptcy court and the district court most specifically stated their basis for jurisdiction. And their basis for jurisdiction was under 1334 and 157. And they specifically pointed to the administration of the estate, they pointed to turnover under 542, and they pointed to the sale order. All of those give it core jurisdiction. This relates to the sale order because it was the part of the property being conveyed under the sale order. Their real argument is only the debtor can bring a 542 action and that once you close the sale, the debtor no longer had standing to pursue that 542 action. My argument is no, the debtor hadn't fully conveyed. Yes, we'd had a sale and we received the hotel. We hadn't received the personal property. The debtor still had an interest. In other words, if you're the seller, you still have an interest in consummating the sale. Let me ask you this. Let's say 10 years down the road, which we almost are maybe, the purchaser of the hotel, the purchaser of whatever is supposed to be in storage facilities maybe out on the lot adjacent to it, discovers that something that purchaser thought he bought wasn't there. Is there authority to go back into bankruptcy court to pursue where's my debtor went? I guess I'm just changing the timing on when this issue arose. Well, I will say that there is continuing jurisdiction and I've seen it continue for quite a while in some bankruptcy cases. I know this court in the Baker v. Baker decision 593 F. App. 416 is a 2015 decision. Similar to the Traveler's case held that a bankruptcy court plainly has jurisdiction to interpret and enforce its own prior orders. In ruling on a motion to compel review of prior orders including an amended order of sale and a plan of reorganization. Yes, there are things that do drag out. I guess part of that would be determined by the purchase and sale agreement and whether or not there was the ability under that. Are you outside the statute of limitations? Can you still come back? Where would you go? One question I have about the turnover order which gets back to the FedPAC decision which may not be good law. I don't know. It's not our circuit. It says turnover orders are only relevant or only usable if there's no dispute about ownership of the property. That it's the turnover property that clearly belongs to the bankruptcy state or wherever else turnover orders operate. If that's true, and again maybe it's not, there was a dispute about an S.R. Maybe you would say not a reasonable dispute, but nonetheless, S.R. was disputing whether they had the right to take some of this property, correct? They were saying it was. Their argument basically on the facts is that the property hadn't been fully paid for because they'd never been paid their retainage. Okay. What I'm saying is there was a dispute about that. Right. Does that mean, at least under the FedPAC decision, it would seem to mean that a turnover order would not have been the appropriate way to deal with that? I don't believe so, Judge. That's because the property was owned by the debtor, always had been owned by the debtor. S.R. Construction, as the bankruptcy court found, removed it from the hotel site. So, we don't know when they took it, but they took it from the hotel site. The FedPAC decision that they have been relying on is a minority opinion, and it's not even followed by the Seventh Circuit anymore. The Seventh Circuit, the Bush versus United States decision in 2019, which we cited, is where the Seventh Circuit moved away from FedPAC and started following this court. What specifically are you talking about that it abandoned? Oh, the FedPAC case? Yeah. What got . . . Well, the idea that there's a loss of jurisdiction. Okay. Okay. Appellant's attack on the bankruptcy court's fact findings fails because the bankruptcy court's findings were not clearly erroneous. Judge Jernigan engaged in a thoughtful and detailed review of the pleadings, the exhibits, several eyewitnesses over the course of three days of hearings before taking the matter under advisement and not ruling for two months. She did what this court has pointed out. She went through the payment applications, of which there were 23. They get submitted all throughout the progress of construction, and she noted that 20 of those, she had unconditional waivers and releases from the appellant indicating they'd receive full payment. So, only as to those 20 did she determine that that property belonged to the debtor and, therefore, was part of the sale. As to the other three, she determined that there wasn't an unconditional waiver and, therefore, that property didn't belong, and so she didn't order that to be released. But she did do a painstaking review of those records, and more so that even than the live testimony. She seemed to be concerned that she would have liked more than she had to make that determination, but it still was the only evidence presented to her, and she made a fact finding. Is that a fair way to look at it? I think that's a fair way to look at it. She was relying upon the witnesses and their testimony. I mean, this was obviously years later, and so the paper evidence she had was her best evidence. The two issues that they raise as fact issues where they say she made an error is that the debtor acquired title to the disputed property. The prior owner was the original owner of the hotel, and the title to that property was improperly conveyed to the debtor. So, all of this, their argument, basically, is you didn't pay the retainage. You paid for the materials, but you didn't pay the retainage on the contract, and, therefore, title didn't transfer, but that's just simply not true. If that was true, then you would never own a hotel where the general contractor walked off and didn't finish the job. You still own the materials, and the documents that she reviewed were very clear that there was a transfer of title, and then, lastly, I want to make sure that we get to the 363M issue. This Court upheld the sale order that went on appeal to the Supreme Court of the United States, which denied rent in October of last year. Appley agreed to purchase substantially all of debtor's assets, including the hotel and personal property related to the hotel. This Court affirmed that Appley is a good-faith purchaser and entitled to the 363M protections from appeal that set forth in the sale order. Appellant unequivocally seeks reversal of that appealed order. The appealed order only exists as a result of the sale order, and its content is inextricably linked to the sale order. There's nothing more integral to the sale order than an order that is addressing the property that was sold under the sale order. The motion only happened because appellant refused to comply with the sale order and challenged what property was included in the sale. Appellant could have challenged the scope of the personal property being sold before the sale order was entered, but did not. Reversal of the appealed order would modify what was sold under the sale order. The Fifth Circuit consistently applies Section 363M to dismiss appeals where a party disputes ownership of property sold by an unstayed bankruptcy order is moot. And appellant never sought a stay of this order. Mr. Wright, I just may come across as a criticism of the brief. It's not intended as that. But it seems to me if 363M does what you say, you should have led with that, not in your oral argument, but in your brief. All the rest of this is irrelevant. Isn't that how 363M usually works? That's how it works. That's how it works. You don't reach jurisdiction. And so it seems to me it's, if you're really confident of it, you didn't have to brief anything else. Well, I'm really confident of it, Judge, but . . . Well, I'm not suggesting you don't cover alternative issues, but all I'm saying is, isn't that the first issue we have to resolve? Yes. It's not the first issue in your brief, Judge. I guess I'm just stating facts, but I'm wondering why it seems subordinate to me. And often in equitable estoppel that comes from 363M, you're looking at, it seems to me, more disruption, perhaps, in an implemented plan than maybe is the situation here with all this just sitting out there in Palm Beach or Palm Springs or wherever it is. And I'm not sure what disruption would occur, which there's no evidence of that one way or the other, but that's usually, it seems to me, the kind of argument that's being made to us, that you can't unravel this. I don't see any particular problem based on my much poor understanding of what all is going on in this case to undoing this one or at least dealing with the arguments that the appellant's making as compared to the usual 363M situation. There was a question there somewhere. If you see it, I want you to respond to that, I guess. Well, we certainly did raise it. I would agree with you. We probably should have put it at the front. We were waiting to see what the Supreme Court did, and they did ultimately deny writ, and so that confirmed the fact that we did have, then, a 363M argument. And I'd also, I also think it's, the court does not have in front of it evidence as to what's happened to all those construction materials as this hotel has been built. But if this case were to go back, that obviously would become an issue as to how do you unravel it. We're talking about heating and air conditioning materials and plumbing fixtures and such. Well, you're making the argument in the brief that this long delay, the six appeals, maybe that just means from bankruptcy to district, I'm not sure. Certainly two up here. All this is deteriorating out there, and the value of it, at least, is deteriorating. Is that, in this case, this long delay is affecting the value of what was purchased at the sale? The long delay has affected the completion of the hotel. Yes, it has. And that's because until we had the sale order complete and the final denial of writ, you have a cloud on title. And so as long as you've got a cloud, even if they don't file and obtain a stay, there's still a cloud on title for any buyer to deal with. And that's just a matter of fact, and that's what my client has had to deal with. Thank you. Thank you, Your Honor. Responding to my esteemed colleague's comments, first, with respect to the comments about supplemental or pseudo-supplemental jurisdiction, I believe the In re Bass case disposed of that, and that bankruptcy courts are not permitted to have supplemental or pseudo-supplemental jurisdiction. With respect to the comments about core versus non-core and related to jurisdiction, we again reference the FedPAC decision and also the Allegheny Court that we cited in our papers and simply stated the bankruptcy court cannot write its own jurisdictional ticket or enlarge it without the underlying subject matter jurisdiction. There were a lot of cases cited by Apelli which were in the context of plan confirmation. Even though we have a Chapter 11 in this case, there was no plan. This was a single asset. That asset was sold, and hence, the subject matter jurisdiction no longer existed once that happened. With respect to the concerns about . . . Mr. Meen, just as a theoretical sense, perhaps, but how do you place your argument against the pretty well-known standard that courts have the inherent power to enforce their judgments? Thank you, Your Honor. Courts do have an inherent power to enforce their judgments. However, fundamentally, federal courts are courts of limited jurisdiction. The bankruptcy court in this instance and in this context did not, our position at least, is that it didn't have to be enforced. Moreover, there was an enforcement being sought to begin with. Our position is that . . . Well, it was a stay order. I'm sorry, a sale order. That was its judgment, its earlier judgment on the bankruptcy proceeding per se. Certainly, Your Honor, there was a sale order. However, the question of what composed the assets of the debtor's estate were questions of state law, not federal bankruptcy law. Once the petition was filed in July of 2020, the debtor's estate was what it was. These assets, the FF&E and the OSC, they were stored off-site. They were never removed from the property site. In fact, there is no evidence in the record that supports that contention. I also would add that there was a statement made by my esteemed colleague that the crux of the fight is about the retainage not being paid. It was a lot more than retainage. The mechanics lien was over $14 million that was owed to appellant in this case. It was more than retainage that was outstanding. There was also some discussion about 363M. I'd like to clarify the record that appellant is not seeking to invalidate or reverse the sale order. Appellant is only asking this court to vacate the turnover order. It's asking for very limited relief in that regard. 363M does not render an appeal moot as appellant does not seek to modify, alter, or invalidate the underlying sale order. Appellant's position is quite simple. It wants the turnover order vacated so it can pursue its rights as it relates to those disputed property. That was again not part of the bankruptcy estate to begin with. With that, Your Honor, I submit and appellant would respectfully request that this court reverse the turnover order for a lack of subject matter jurisdiction or in the alternative if the court does find subject matter jurisdiction, that the court reverse the turnover order with instructions to find that the prior owner never possessed title to the property and or the prior owner never appropriately conveyed title to the property with respect to the debtor. Thank you. All right. Thank you both. I at least needed some help on this case and I appreciate the two of you providing it. We are on recess until tomorrow at 9 a.m.